# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

JEROME S.,                                    Case No. 19-cv-931 (ECW)

       Plaintiff,

v.                                            **ORDER**

ANDREW M. SAUL,
Commissioner of Social Security,

       Defendant.

_____

This matter is before the Court on Plaintiff Jerome S.'s ("Plaintiff") Motion for Summary Judgment (Dkt. 17) and Defendant Commissioner of Social Security Andrew Saul's ("Defendant") Motion for Summary Judgment (Dkt. 21). Plaintiff, proceeding pro se, filed this case seeking judicial review of a final decision by Defendant denying his application for supplementary security income. For the reasons stated below, Plaintiff's Motion is denied, and Defendant's Cross-Motion is granted.

## I.     <u>BACKGROUND</u>

Plaintiff filed a Title XVI application for supplemental security income on July 30, 2015, alleging disability beginning January 1, 2014. (R. 100, 293-94.)[1] Plaintiff later amended his alleged disability onset date from January 1, 2014, to July 29, 2015.[2] (R. 9,

_____

[1]    The Social Security Administrative Record ("R.") is available at Dkt. 15.

[2]    Plaintiff also filed a Title II application for disability insurance benefits on July 29, 2015, which, like his Title XVI application, alleged disability beginning January 1, 2014.

59, 311.)  Plaintiff's application alleged disability due to bipolar disorder, attention

deficit hyperactivity disorder ("ADHD"), spina bifida, arthritis in his knees, carpal tunnel

syndrome, depression, anxiety, high blood pressure, sciatica, and acid reflux.  (R. 139,

193.)  His application was denied initially (R. 138-60, 163-64, 223-27, 229-30), and on

reconsideration (R. 192-218, 221-22, 237-39).  Plaintiff requested a hearing before an

administrative law judge ("ALJ"), which was held on July 16, 2018 before ALJ William

Leland.  (R. 9.)  Plaintiff was represented by an attorney at the hearing.  (R. 9.)  The ALJ

issued an unfavorable decision on October 16, 2018, finding that Plaintiff was not

disabled from the alleged onset date through the date of the ALJ's decision.[3]  (R. 23.)

---

(99, 291-92.)  When Plaintiff amended his alleged onset date to July 29, 2015 at the
hearing before the ALJ, he acknowledged that the amendment was a withdrawal of his
Title II claim.  (R. 9, 59, 64.)

[3]      Plaintiff submitted an exhibit with his Motion.  (Dkt. 19.)  The first seven pages of
the exhibit are duplicates of pages already in the record.  (*Compare* Dkt. 19 at 1-7 *with* R.
574, 572, 580, 578, 576, 568, 570.)  The exhibit also includes a "Group Residential
Housing – Professional Statement of Need" dated September 23, 2019.  (Dkt. 19 at 8-9.)
This evidence postdates Plaintiff's October 25, 2018 request for review by the Appeals
Council and the Appeals Council's February 27, 2019 decision rejecting review.  (*See* R.
1-5, 290.)  Since the relevant time period for both Motions ends on October 16, 2018, the
date of the ALJ's decision, the Court need not consider this document.  *Myers v. Colvin*,
721 F.3d 521, 526 (8th Cir. 2013) ("An application for disability benefits remains in
effect only until the issuance of a 'hearing decision' on that application, so the evidence
of [claimant's] admission [to a hospital for depression several months after the ALJ's
determination] cannot affect the validity of the ALJ's determination.") (citing 20 C.F.R.
§§ 404.620(a), 416.330).  Moreover, the Eighth Circuit has concluded that a district
court's consideration of evidence outside of the record before the Commissioner is
generally precluded; remand is warranted only upon showing that new evidence is
material, i.e., non-cumulative, relevant, and probative of the claimant's condition for the
time period for which benefits were denied, which Plaintiff has failed to do in this case.
*See Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997); see also 42 U.S.C. § 405(g).
To the extent Plaintiff contends that this Group Residential Housing document describing
him as having "disabling conditions" demonstrates he is disabled under the Act (*see* Dkt.

Following the five-step sequential evaluation process under 20 C.F.R.

§ 416.920(a)[4] (R. 10), the ALJ first determined at step one that Plaintiff had not engaged

in substantial gainful activity since July 29, 2015.  (R. 11.)  At step two, the ALJ

determined that Plaintiff had the following severe impairments: facet arthropathy of the

lumbar spine; patellofemoral osteoarthrosis of the right knee; osteoarthritis of the left

knee; right dorsal and plantar calcaneal spurs; carpal tunnel syndrome; obstructive sleep

apnea; essential hypertension; obesity; depression; and anxiety.  (R. 11-12.)

At step three, the ALJ determined that Plaintiff did not have an impairment that

met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part

404, subpart P, appendix 1.  (R. 12-14.)  The ALJ expressly considered listing 1.02

(major dysfunction of a joint(s) (due to any cause)), listing 1.04 (disorders of the spine),

---

17), the ultimate question of disability is reserved to the Commissioner, *see Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996) ("[S]tatements that a claimant could not be gainfully employed 'are not medical opinions but opinions on the application of the statute, a task assigned solely to the discretion of the Secretary.'") (quoting *Nelson v. Sullivan*, 946 F.2d 1314, 1316 (8th Cir. 1991)).

[4]     The Eighth Circuit has described the five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003).

and listing 11.14 (peripheral neuropathy) in making this finding.  (R. 12.)  As to Plaintiff's mental impairments, the ALJ also considered listings 12.04 and 12.06 and whether the "paragraph B" criteria were satisfied, finding that they were not, because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation.  (R. 13.)  The ALJ also considered whether the "paragraph C" criteria were satisfied and found that they were not, because the evidence failed to show that Plaintiff had only a minimal ability to adapt to changes in his environment and daily life, and rather showed that he "is able to live with others, attend to his own medical care, go fishing, shop, go to church, attend to his own hygiene and grooming, and prepare simple meals."  (R. 14.)

At step four, after reviewing the entire record, the ALJ found Plaintiff's residual functional capacity ("RFC") to be as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can frequently operate hand controls bilaterally; frequently handle and finger bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; he can never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle; he can frequently be exposed to humidity and wetness, extreme cold, and extreme heat; he is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (i.e. assembly line work); he is limited to simple work-related decisions in using his judgment and dealing with changes in the work setting; he is able to frequently interact with supervisors; and he can occasionally interact with coworkers and the public.

(*Id.*)  In arriving at this RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his

4

symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (R. 15.)

At step five, the ALJ concluded that Plaintiff would be unable to perform any past relevant work (R. 21), but that there existed jobs in significant numbers in the national economy that he could perform given his age, education, work experience, and RFC (R. 22).  Based on the testimony of a vocational expert, the ALJ concluded that, given the RFC set forth above, Plaintiff "would be able to perform the requirements of representative occupations such as" a housekeeper, a food service worker, and a mail clerk.  (R. 22-23.)  Accordingly, the ALJ deemed Plaintiff not disabled. (R. 23.)

Plaintiff requested review of the decision.  (R. 290.)  The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner.  (R. 1-3.)  Plaintiff then commenced this action for judicial review.

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties.  The Court will recount the facts of record in its analysis only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.      LEGAL STANDARD

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or if the ALJ's decision resulted from an error of law.  *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)).  "Substantial evidence is less than a

preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id.* (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). The Court "considers evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.*

"A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The Eighth Circuit has held that "a 'claimant's residual functional capacity is a medical question.'" *Id.* (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). "'[S]ome medical evidence' must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Id.* (citation omitted) (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012)). "Moreover, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quotation marks and citation omitted) (highly unlikely that ALJ did not consider and reject physician's opinion when ALJ made specific references to other findings set forth in physician's notes).

## III.      **DISCUSSION**

The Court interprets pro se pleadings liberally. *Kliber v. Soc. Sec. Admin.*, 794 F. Supp. 2d 1025, 1039 (D. Minn. 2011) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)) (pro se pleadings liberally construed). With this in mind, the Court construes Plaintiff's single-page brief as making four arguments: (1) that the ALJ improperly discredited the opinions of his treating physicians that he was disabled ("He said that I was still able to work, contrary to my doctors statement of permanent disablement . . . ."); (2) that the ALJ committed reversible error by not mentioning Plaintiff's post-traumatic stress disorder ("PTSD") ("My PTSD was never even mention[ed] . . . "); (3) that the ALJ's RFC determination was otherwise deficient because it did not take into account side effects from Plaintiff's medications, that he cannot operate equipment or vehicles, and that he cannot sit, stand, or concentrate beyond a limited time period ("even after describing the meds I take the effects it has as well as side effects"; "I'm advised not to operate any sort of equipment or motor vehicles"; "couldn't perform not even the menial job, unable to sit, stand or even concentrate for very limited amounts of time"); and (4) that the ALJ's determination that someone with all of Plaintiff's limitations could perform other work was erroneous ("[T]he facts that was obvious overlook at my hearing . . . . [T]he judge asked the us attorney 'could a individual, in my condition with my symptoms maintain employment in the workforce,' his answer was yes."). (Dkt. 17 (quotations cleaned up).) The Court addresses each argument below.

A.      **Weight Assigned to Treating Source Opinions**

Plaintiff contends that the ALJ improperly discounted the opinions of his treating sources that he could not work and was disabled.  (Dkt. 17 ("[The vocational expert] said that I was still able to work, contrary to my doctors' statement of permanent disablement . . . .") (cleaned up).)  The Court understands this argument to refer to opinions from Tyler Bridge, MD, and Ken Becker, MA, LADC, LPCC, that Plaintiff would not be able to perform any employment.[5]  (R. 580; R. 570, 572.)  The ALJ gave the opinions of Dr. Bridge and Mr. Becker little weight and declined to give them controlling weight as treating sources.  (R. 21.)  Plaintiff did not identify evidence calling into question the ALJ's determination other than generally stating that his doctors said he was permanently disabled and that several other government agencies honored those opinions.  (Dkt. 17.)  Defendant contends that the ALJ "gave good reasons for giving [these opinions] little weight" and that "the record shows that the ALJ properly considered Dr. Bridge's and Mr. Becker's statements along with all of the other record evidence in assessing Plaintiff's RFC."  (Dkt. 22 at 8.)

"A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it.  An ALJ may elect under certain circumstances not to give a treating physician's opinion controlling weight.  For a treating physician's opinion to have controlling weight, it must be supported by medically acceptable laboratory and

---

[5]      If Plaintiff's argument meant to encompass the September 23, 2019 Group Residential Housing – Professional Statement of Need, as explained in footnote 3, the Court will not consider that record because it post-dates the ALJ's decision and encroaches on the authority reserved to the Commissioner.

diagnostic techniques and it must not be 'inconsistent with the other substantial evidence in [the] case record.'" *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1527(d)(2)) (citations omitted). "A treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions." *Id.* (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)); *see also Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (quoting *Wildman*, 596 F.3d at 964) ("However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." (alteration in original) (internal quotation omitted)). "Moreover, a treating physician's opinion that a claimant is 'disabled' or 'unable to work,' does not carry 'any special significance,' because it invades the province of the Commissioner to make the ultimate determination of disability." *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009) (quoting 20 C.F.R. §§ 416.927(e)(1), (3)) (citation omitted).

### 1.    Tyler Bridge, MD

Plaintiff has been treated by Dr. Bridge since at least November 2015. (R. 494, 554.) On March 8, 2016, Plaintiff saw Dr. Bridge for a follow-up visit, at which Dr. Bridge reported in his progress notes, "His only request this visit is that he needs a medical request form filled out. He says he is unable to work due to chronic lower back and bilateral knee pain." (R. 595.) The objective review states, "Musculoskeletal: no deformities, normal ROM, nontender to palpation or with movement." (R. 595.) Dr.

Bridge also noted regarding the chronic lower back pain, "would revisit PT [physical therapy] and first-line treatments." (R. 596.)

On the same day, Dr. Bridge filled out a medical opinion form in which he checked a box stating, "Patient will not be able to perform any employment in the foreseeable future." (R. 580.) The only physical or mental limitation noted as "permanent" was bilateral knee osteoarthritis, and Dr. Bridge checked a box indicating that Plaintiff was not following the prescribed treatment plan. (R. 580.)

Plaintiff saw Dr. Bridge on February 21, 2017 to request completion of a medical opinion form and housing form. (R. 726.) Dr. Bridge noted, "As per his last visit, he says he is unable to work whatsoever due to chronic low back pain." (R. 726.) Dr. Bridge further noted that Plaintiff "has been to some PT appointments but shows 'poor motivation' and 'poor compliance.'" (R. 727.) Regarding the request to fill out the form with a statement that Plaintiff could not work at all, Dr. Bridge "[saw] no limitation to working a job that allows for frequent opportunities to sit as his pain is relieved by sitting." (R. 727.) Dr. Bridge indicated that the form was completed "stating that he has no restrictions with frequent opportunities to sit (however, no lifting > 10 pounds)" and noted that Plaintiff should continue physical therapy. (R. 727.)

Plaintiff saw Dr. Bridge again on March 7, 2017. (R. 732.) Dr. Bridge noted that Plaintiff "has been to some PT appointments but shows 'poor motivation' and 'poor compliance'" and gave Plaintiff a referral to a different physical therapy provider. (R. 733.) Dr. Bridge also gave a referral to a psychiatry provider, which Plaintiff had requested. (R. 732-33.)

As to Dr. Bridge's opinion, the ALJ explained that his opinions "are not entirely consistent with other substantial evidence in the record that indicates the claimant's limitations are not as severe, they appear to be based largely upon the claimant's subjective complaints, and they also concern the claimant's residual functional capacity and ability to work, which are issues reserved to the Commissioner."  (R. 21 (citing 20 C.F.R. §§ 404.1527(d), 416.927).)

For the following reasons, the Court finds that substantial evidence supports the weight the ALJ assigned to Dr. Bridge's March 8, 2016 opinion.  First, Dr. Bridge's March 8, 2016 opinion that Plaintiff would not be able to work is inconsistent with other substantial evidence in the record, including Dr. Bridge's own progress notes from the same day observing a normal range of motion and no tenderness to palpation or with movement.  (R. 595 (March 8, 2016) ("Musculoskeletal: no deformities, normal ROM, nontender to palpation or with movement.").)  His opinion is also inconsistent with his February 21, 2017 treatment note stating that he "[saw] no limitation to [Plaintiff] working a job that allows for frequent opportunities to sit as his pain is relieved by sitting."  (R. 727 (February 21, 2017).))  "A treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker*, 459 F.3d at 937 (citation omitted).  Further, Dr. Bridge's March 8, 2016 "check a box" opinion did not point to any objective medical evidence supporting his opinion that Plaintiff was not able to work.[6]  Indeed, his treatment records indicate that Plaintiff was

---

[6]     It is also important to note that  questionnaires that "'consist of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-

seeking a medical opinion to that effect based on his subjective complaints.  (R. 595

("[Plaintiff's] only request this visit is that he needs a medical form filled out.  He says he

is unable to work due to chronic lower back and bilateral knee pain"), 726-27 ("[Plaintiff]

presents today with request for completion of a medical opinion form and housing form.

. . . As per his last visit, he says he is unable to work whatsoever due to chronic low back

pain.").)  "[A]n ALJ need not give a treating physician's opinions controlling weight

when the opinion is based on a claimant's subjective complaints that [the] ALJ does not

find credible."  *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017).

Moreover, as the ALJ noted, Dr. Bridge's opinion that Plaintiff would not be able

to work for the foreseeable future is also inconsistent with the medical evidence in the

record as a whole.  (*See* R. 15-18.)  That evidence includes a December 2016 report of

steady and normal gait, well-tolerated range of motion in all extremities, negative straight

leg raising tests, full strength in the lower extremities, no tenderness, and no pain in his

lumbosacral muscles due to palpation (R. 15-16 (citing R. 683)) and a January 2017

report of normal appearing knees with full range of motion, a normal gait, and no signs of

clear joint disability (R. 17 (citing R. 689)).  The opinions of treating physicians "are

given less weight if they are inconsistent with the record as a whole or if the conclusions

consist of vague, conclusory statements unsupported by medically acceptable data."

*Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004).

---

blank responses'—that do not recount medical evidence or provide elaboration 'possess
'little evidentiary value.'"  *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018)
(quoting *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)).

Finally, as the ALJ stated, "a treating physician's opinion that a claimant is 'disabled' or 'unable to work,' does not carry 'any special significance,' because it invades the province of the Commissioner to make the ultimate determination of disability." *Davidson*, 578 F.3d at 842 (quoting 20 C.F.R. §§ 416.927(e)(1), (3)) (citation omitted). Thus, it was proper for the ALJ to discount Dr. Bridge's opinion that Plaintiff would be unable to work for the foreseeable future on the grounds that it invades the province of the Commissioner.

### 2.      Ken Becker, MA, LADC, LPCC

Plaintiff saw his counselor Mr. Becker for a diagnostic assessment on December 30, 2015. (R. 481.) Plaintiff reported that he was experiencing anxiety, hypertension, and delusions. (*Id.*) He presented as well groomed, with little eye contact, fair attention, a blunted affect, a stable mood, calm motor activity, loose thought process, impaired memory, impaired judgment and insight, oriented in all spheres, slow speech, and average intelligence. (R. 483-84.) He denied hallucinations, delusions, suicidality, and homicidality, and exhibited no behavioral disturbances. (R. 483-84.)

Mr. Becker saw Plaintiff on March 1, 2016 and on the same day filled out a medical opinion form in which he indicated Plaintiff suffered from depression, PTSD, and anxiety (listed as both a physical disability and a psychological disability/development disability) with an onset date of December 30, 2015. (R. 570, 572). He indicated that Plaintiff's conditions were expected to last one year and he was

"[u]nable to perform any employment."[7]  (R. 570, 572.)

The ALJ discounted Mr. Becker's opinion on the ground that it was "not entirely consistent with other substantial evidence in the record that indicates the claimant's limitations are not as severe, it lacks a narrative explanation of the restriction, and it also concerns the claimant's residual functional capacity and ability to work, which are issues reserved to the Commissioner."  (R. 21 (citing 20 C.F.R. §§ 404.1527(d), 416.927).)

The Court finds that the ALJ did not err in discounting Mr. Becker's opinion.  Mr. Becker's March 1, 2016 opinion that Plaintiff would not be able to work is inconsistent with other substantial evidence in the record, including Mr. Becker's own December 2015 treatment notes finding that Plaintiff presented as well groomed, with fair attention, a stable mood, calm motor activity, oriented in all spheres, and average intelligence and that Plaintiff denied hallucinations, delusions, suicidality, and homicidality, and exhibited no behavioral disturbances.  (R. 483-84.)  "A treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker*, 459 F.3d at 937 (citation omitted).

Further, Mr. Becker's opinion is inconsistent with the medical evidence in the record as a whole.  For example, a mental status exam performed by Kathleen M. Heaney, MD, on January 28, 2016 in connection with an intake for opiate and cannabis use disorder described Plaintiff as alert and oriented, as denying homicidal or suicidal

---

[7]     Plaintiff's disability appeal filing indicates he saw Mr. Becker again in April 2016. (R. 381.)

ideation and manic symptoms, with grossly intact cognition and fair insight and judgment.  (R. 533.)

Mr. Becker's opinion is also inconsistent with the results of the consultative examination performed by Alford Karayusuf, MD.  On October 3, 2016, Dr. Karayusuf considered Plaintiff's complaints of short attention span and PTSD and performed a mental status exam.  (R. 606.)  Based on that objective examination, Plaintiff was oriented to time and place, had good immediate digit recall but impaired recent recall (but noted that Plaintiff "put far less than his best effort into responding to the performance questions"), had dull-normal intelligence and nil insight.  (R. 606.)  While Plaintiff reported hallucinating voices inside his head, he reported no delusions, had good eye contact, coherent speech, and was smiling and pleasant throughout the interview with a mildly elevated mood and an appropriate affect. (R. 606.)  Dr. Karayusuf diagnosed Plaintiff with bipolar disorder, PTSD, opioid and cannabis dependence, and personality disorder, not otherwise specified, with narcissistic and antisocial traits.  (R. 606.)  He concluded that Plaintiff could understand, retain, and follow simple instructions and should be restricted to superficial interactions with fellow workers, supervisors, and the public.  (R. 607.)  With those restrictions, Plaintiff should be able to maintain pace and persistence.  (R. 607.)

Other evidence in the record undermines Mr. Becker's opinion.  On December 30, 2016, Samuel Abeng-Amoako, APRN, CNP reported Plaintiff as having normal mood and affect.  (R. 683)  Further, on April 12, 2017, Samantha L. Anders, PhD, LP, reported that Plaintiff—while anxious, displaying poor insight and judgment, and reporting

hallucinations—had a normal thought process, no suicidal, violent, or homicidal ideation, normal speed, and was alert, neatly groomed, cooperative, pleasant, engaged, with an appropriate/mood-congruent affect and logical/goal-directed thought processes (R. 750-51).  Dr. Anders noted that "[Plaintiff] was a very vague and non specific [sic] historian, and it has been noted that he may be interested in secondary gain in the record."  (R. 754.)

Moreover, as the ALJ found, Mr. Becker's opinion did not have a narrative explanation supporting his conclusion that Plaintiff was not able to work; the only specifics offered by Mr. Becker were that Plaintiff would "have to be told repeatedly what to do" due to his attention-deficit disorder, a diagnosis that was not otherwise addressed in his opinion.  (R. 572.)  *See Stormo*, 377 F.3d at 805-06 (finding that the opinions of treating physicians "are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data").  Mr. Becker's determination that Plaintiff would require repeated instructions was offered as an accommodation that Plaintiff would need "to work or participate in work-related activities" (R. 572), which suggests that Mr. Becker believed Plaintiff could work under certain circumstances.

Finally, as set forth previously, Mr. Becker's opinion that Plaintiff was unable to perform any employment does not carry any special significance as it invades the province of the Commissioner to make the ultimate determination of disability under the Act.  *See Davidson*, 578 F.3d at 842.

Plaintiff also argues that "three other government agencies honored" his doctors'

16

statements of "permanent disablement."  (Dkt. 17 (describing programs requiring professional statement of need/medical opinions).)  But although an ALJ may consider decisions by other governmental agencies about whether an individual is disabled, disability determinations made by other agencies are not binding on the Commissioner. 20 C.F.R. § 416.904 ("A decision by . . . any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision . . . .  Therefore, a determination made by another agency that you are disabled or blind is not binding on us.")

Therefore, for all of the reasons stated above, the Court concludes that the ALJ's decision to assign the opinions of Dr. Bridge and Mr. Becker little weight is supported by substantial evidence in the record as a whole.

**B.      The ALJ's Failure to Address Plaintiff's PTSD**

Plaintiff argues that it was error for the ALJ not to address his PTSD.  (Dkt. 17 ("My PTSD was never even mention . . . .").)  Plaintiff's brief does not assign this error to any specific step in the process, *i.e.*, whether the ALJ should have found at step two that his PTSD was a severe impairment, or whether the ALJ's RFC determination at step four should have included additional limitations based on Plaintiff's purported PTSD. The record does not particularly clarify the question.  Plaintiff did not allege PTSD in his application for benefits.  (R. 139, 193.)  At the hearing, while Plaintiff, through counsel, listed PTSD as one of his "conditions," he did not allege specifically that PTSD was a basis for disability, or specify that it was severe, and seemed to suggest that his argument was about Plaintiff's RFC and whether he could do any work.  (R. 60 ("In terms of our

theory, Your Honor, [Plaintiff] is impaired by physical and mental conditions."); R. 62
(citing R. 606 as to PTSD) ("Turning briefly to the mental aspects of the case, Your
Honor, mental health treatment has been limited, but there are diagnoses, including
bipolar and depressive disorder, as well as post-traumatic stress disorder and personality
disorder." (citations omitted)); *id.* ("[W]e believe a less than light [RFC] would direct a
finding of disabled per medical/vocational rule 201.14."); R. 62-63 (arguing that if ALJ
did not find Plaintiff's condition satisfied the rule directing a finding of disability, "the
combination of his mental and physical symptoms would prevent him" from working); R.
63 (ALJ asked, "And Counsel, that meets or equals any listings, or is this a Step 5 case?"
Plaintiff responded, "A Step 5 case.").)  Defendant does not address Plaintiff's argument
regarding PTSD in his brief.  (*See* Dkt. 22.)

Given that Plaintiff did not allege PTSD as a basis for disability in his application
or present it at the hearing as a severe impairment—rather, he included PTSD in an
argument presented as an RFC issue—the Court addresses Plaintiff's argument regarding
his PTSD as a challenge to the ALJ's RFC finding.  *See Gregg v. Barnhart*, 354 F.3d
710, 713 (8th Cir. 2003) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996))
("[A]n ALJ is not obliged 'to investigate a claim not presented at the time of the
application for benefits and not offered at the hearing as a basis for disability.'")
However, the Court will also address this argument, in the alternative, as a challenge to
the step two determination.

18

### 1.    The RFC Included Functional Limitations Resulting From PTSD

The Court construes Plaintiff's challenge as arguing that the ALJ did not consider his PTSD when determining his RFC. Where—as here—a Plaintiff has at least one severe impairment, "the limiting effects of all" Plaintiff's impairment(s) are considered in determining a Plaintiff's residual functional capacity, including severe and non-severe impairments. *See* 20 C.F.R. § 404.1545(a)(1)-(2) (an ALJ must consider all relevant evidence, including non-severe impairments, in his RFC determination); 20 C.F.R. § 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'. . . ."). Indeed, the Eighth Circuit has concluded that "[e]ven 'non-severe' impairments must be considered in the RFC." *Igo v. Colvin*, 839 F.3d 724, 730 (8th Cir. 2016) (citing Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing *Lauer*, 245 F.3d at 704). But "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Id.* at 619-20 (citing 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006)).

Here, several consulting medical opinions included a diagnosis of PTSD (R. 438 (David Prybock, PhD); R. 446 (Adam E. Sohnen, MD)[8]; R. 606 (Dr. Karayusuf)), as did

---

[8]    Although he included PTSD in his diagnoses, Dr. Sohnen did not opine that Plaintiff had any mental or environmental limitations. (R. 446.)

treating provider Mr. Becker's March 1, 2017 opinion (R. 570; *see* R. 485 (diagnosing

PTSD)).  Although the ALJ did not "mention" PTSD in his decision, he acknowledged

that he "must consider all of the claimant's impairments, including impairments that are

not severe."  (R. 11 (citing 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945;

SSR 96-8p).)  In making his RFC determination, he also stated that it was made "[a]fter

careful consideration of the entire record."  (R. 14, 15.)  The ALJ considered and

discussed the records that included a PTSD diagnosis when determining the RFC,

including Mr. Becker's December 30, 2015 diagnostic assessment (R. 16 (citing R. 481)

the opinions of state agency consultants Janis L. Konke, MS, LP and Kari Kennedy,

PsyD (R. 19 (citing R. 130-133 (Ms. Konke), R. 177-79 (Dr. Kennedy)), the opinion of

consultative examiner Dr. Karayusuf (R. 19-20 (citing R. 605-07)), and the opinion of

consultative examiner Dr. Prybock (R. 20 (citing R. 435-41).  In sum, the record reflects

that the ALJ considered all the evidence in the record regarding Plaintiff's mental

condition and determined the Plaintiff's RFC based on that evidence.

Further, although the ALJ did not mention PTSD, he did find that Plaintiff's

depression and anxiety were severe impairments (R. 12) and specifically considered the

effect of Plaintiff's mental impairments on his ability to work (R. 15 ("[W]hile the

claimant's mental and physical impairments certainly cause limitations in functioning,

they are not work preclusive.")).  Several of the limitations in the RFC reflect Plaintiff's

mental impairments.  (R. 14 ("[H]e is limited to performing simple, routine, and

repetitive tasks, but not at a production rate pace (i.e. assembly line work); he is limited

to simple work-related decisions in using his judgment and dealing with changes in the

work setting; he is able to frequently interact with supervisors; and he can occasionally interact with coworkers and the public").)  The RFC incorporated many of the functional limitations set forth in Dr. Karayusuf's opinion (which the ALJ gave great weight (R. 19)) that Plaintiff could understand, retain, and follow simple instructions and should be restricted to superficial interactions with fellow workers, supervisors, and the public, but that Plaintiff should be able to maintain pace and persistence with those restrictions (R. 607).  The RFC also reflects significant portions of Ms. Konke's opinion that Plaintiff could concentrate and attend to 3-4 step and limited detail tasks, could tolerate superficial interactions with coworkers, supervisors, and the public and could tolerate ordinary levels of supervision in that context and Dr. Kennedy's affirmation of Ms. Konke's opinion (except that Plaintiff would do best without responsible public contact) (R. 130-133 (Ms. Konke), R. 177-79 (Dr. Kennedy)), which the ALJ also gave great weight (R. 19).  To the extent such limitations are not consistent with the opinions of Mr. Becker and Dr. Prybock, the ALJ explained why he gave little weight to those opinions, including because Mr. Becker's opinion was inconsistent with the record as a whole and Dr. Prybock's opinion was based on Plaintiff's subjective reports and were inconsistent with the record.  (R. 20-21.)  Thus, regardless of whether the ALJ mentioned PTSD, he incorporated limitations arising from PTSD into the RFC.

Moreover, none of the opinions tied any functional limitations specifically to PTSD (as compared to Plaintiff's other mental health concerns, which included depression and anxiety).  (*See* R. 438; R. 446; R. 606; R. 570.)  Plaintiff has not explained how his RFC would have been different if the ALJ had mentioned his PTSD,

or identified any PTSD-based limitations that should have been included in the RFC and were not. The Court concludes that the ALJ incorporated functional limitations resulting from PTSD into the RFC and therefore, the failure to mention PTSD does not require reversal of the ALJ's decision or remand. The Court also finds that the functional limitations related to Plaintiff's depression, PTSD, and anxiety are supported by substantial evidence, including the opinions of Dr. Karayusuf, Ms. Konke, and Dr. Kennedy, and the objective evidence of Plaintiff's mental status exams.

**2.    Any Error Resulting from the Failure to Identify PTSD as a Severe Impairment is Harmless and Does Not Require Remand**

As explained above, Plaintiff's PTSD argument appears to be a challenge to the RFC. However, in the alternative, the Court construes Plaintiff's argument as an argument that the ALJ erred by not identifying PTSD as a severe impairment at step two. Even if the Court assumed that it was error for the ALJ not to identify PTSD as a severe impairment (which Plaintiff has not argued with any specificity), the Court finds that the alleged error was harmless.

At the second step, the SSA considers "the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 416.920(a)(4)(ii). It is a claimant's burden to demonstrate a severe medically determinable impairment at step two of the sequential evaluation, but that burden is not difficult to meet and any doubt about whether the claimant met his burden is resolved in favor of the claimant. *See Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007) (citations omitted); *David G. v. Berryhill*, No. 17-CV-3671 (HB), 2018 WL 4572981, at *4 (D. Minn. Sept. 24, 2018) (quoting *Dewald v. Astrue*, 590 F. Supp.

2d 1184, 1199 (D.S.D. 2008)).  An impairment is not severe if it does not significantly

limit a claimant's physical or mental ability to do basic work activities.  *See Kirby*, 500 at

707; 20 C.F.R. § 416.920(c).  The severity showing "is not an onerous requirement for

the claimant to meet, but it is also not a toothless standard."  *Kirby*, 500 F.3d at 708

(citation omitted).

Here, the ALJ failed to decide whether Plaintiff's PTSD was a severe or non-

severe impairment.  The Court considers whether this failure requires remand.  In *Nicola*

*v. Astrue*, 480 F.3d 885 (8th Cir. 2007), the plaintiff contended that she was disabled, in

part, due to borderline intellectual functioning.  *Id.* at 886.  On appeal, the claimant

"assert[ed] that the ALJ erred in failing to include her diagnosis of borderline intellectual

functioning as a severe impairment at step two of the sequential analysis."  *Id.* at 887.

Although the Commissioner in *Nicola* conceded that the plaintiff's borderline intellectual

functioning should have been considered a severe impairment, the Commissioner argued

that the ALJ's error was harmless.  *Id.*  The Court of Appeals for the Eighth Circuit

"reject[ed] the Commissioner's argument of harmless error," noting that "[a] diagnosis of

borderline intellectual functioning should be considered severe when the diagnosis is

supported by sufficient medical evidence."  *Id.*

Courts have been split regarding whether an error at step two can be harmless.

"Some Courts have interpreted *Nicola* to mean that an error at step two can never be

harmless."  *Lund v. Colvin*, No. 13-cv-113 JSM, 2014 WL 1153508, at *26 (D. Minn.

Mar. 21, 2014) (collecting cases); *see also Moraine v. Soc. Sec. Admin.*, 695 F. Supp. 2d

925, 956 (D. Minn. 2010) ("The Court of Appeals for the Eighth Circuit has held that an

ALJ's erroneous failure, at Step Two, to include an impairment as a severe impairment, will warrant a reversal and remand, even where the ALJ found other impairments to be severe."). Other courts, including other courts in this District, have refused to interpret *Nicola* as establishing a *per se* rule that any error at step two is a reversible error. *See Lund*, 2014 WL 1153508, at *26 (collecting cases).

In the absence of clear direction from the Eighth Circuit, the prevailing view of courts in this District has been that an error at step two may be harmless where the ALJ considers all of the claimant's impairments in the evaluation of the claimant's RFC. *See, e.g.*, *Rosalind J. G. v. Berryhill*, No. 18-cv-82 (TNL), 2019 WL 1386734, at *20 (D. Minn. Mar. 27, 2019) ("Consistent with the prevailing view in this District, any potential error by the ALJ in not including Plaintiff's chronic pain syndrome as a severe impairment at step two was harmless based on the ALJ's consideration of the intensity, persistence, and functional effects of Plaintiff's pain when determining her residual functional capacity."); *David*, 2018 WL 4572981, at *4; *Tresise v. Berryhill*, No. 16-cv-3814 (HB), 2018 WL 1141375, at *5 (D. Minn. Mar. 2, 2018) ("Courts in this district have followed the approach set forth in *Nicola* and determined that reversal based on errors at step two is only warranted when the ALJ fails to consider the omitted impairments in the RFC."); *Lorence v. Astrue*, 691 F. Supp. 2d 1008, 1028 (D. Minn. 2010) ("The ALJ's failure to include adrenal insufficiency as a severe impairment was not by itself reversible error, because the ALJ continued with the evaluation of Plaintiff's pain and fatigue in determining Plaintiff's residual functional capacity.").

In ascertaining the applicability of the harmless error analysis to an error at step

two, the Court does not distinguish between situations where the error being assigned is the failure to classify an impairment as severe and, as here, the failure to address an impairment—so as long as the impairment is addressed in the evaluation of a claimant's RFC. *See Mistelle S. v. Saul*, No. 19-CV-01153 (SRN/HB), 2020 WL 3405437, at *4 (D. Minn. June 2, 2020) ("The same reasoning applies even if an ALJ fails to discuss whether certain impairments are severe or non-severe at the second step (which is the case here), as long as the limitations caused by these impairments are adequately assessed later in the process." (quotation marks and citation omitted)), *R.&R. adopted*, 2020 WL 3402432 (D. Minn. June 19, 2020); *Misty G. v. Berryhill*, No. 0:18-cv-00587-KMM, 2019 WL 1318355, at *4 (D. Minn. Mar. 22, 2019) (same); *Johnson v. Comm'r of Soc. Sec.*, No. 11-cv-1268 JRT/SER, 2012 WL 4328413, at *22 (D. Minn. July 11, 2012) ("Assuming *arguendo* that the ALJ erred in failing to find certain impairments severe and not evaluating the severity of other impairments, that error is harmless here."), *R.&R. adopted*, 2012 WL 4328389 (D. Minn. Sept. 20, 2012). Such a finding is consistent with the Commissioner's regulations. *See* 20 C.F.R. § 416.945(a)(1)-(2) (an ALJ must consider all relevant evidence, including non-severe impairments, in his RFC determination). This is especially the case here, where Plaintiff has not articulated how this error affects the disability determination. The Court will not simply remand for the sake of remand on what may amount to a technical error related to an impairment that has no bearing on Plaintiff's functional capacity during the time period in question.

### 3.   Application of Harmless-Error Test

To the extent Plaintiff contends that his PTSD alone warrants a finding a disability, that is not the law.  Rather, "the mere presence of a mental disturbance is not disabling per se; rather a claimant must show a severe functional loss establishing an inability to engage in substantial gainful activity."  *Budo v. Astrue*, No. 4:12CV187 JAR TIA, 2013 WL 1183364, at *22 (E.D. Mo. Mar. 5, 2013) (citing *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990)), *R.&R. adopted sub nom. Budo v. Colvin*, 2013 WL 1182059 (E.D. Mo. Mar. 21, 2013).

As discussed in Section III.B.2, ALJ's RFC discussion addresses Plaintiff's functional limitations related to the symptoms that would reasonably be attributable to his PTSD—e.g., difficulty interacting with others, difficulty concentrating, ability to follow instructions and complete tasks, and recall.  (*See generally* R. 15-21).  The ALJ reviewed numerous medical records with various normal and intact mental findings.  (R. 16-18.)  The ALJ also addressed the opinions of Mr. Becker, Ms. Konke, Dr. Kennedy, Dr. Karayusuf, and Dr. Prybock, each of which noted a PTSD diagnosis, and explained the rationale for the weight assigned to each opinion.  (R. 16-20.)  Nothing in the record suggests that the RFC would have been different had the ALJ found PTSD to be a severe impairment, and Plaintiff has not identified any limitation that should have been included or would have been different had the ALJ done so.  Because Plaintiff is unable to show that any error at step two negatively impacted the remainder of the sequential analysis, including the determination of the RFC, remand is not appropriate.  *See Rouse v. Comm'r of Soc. Sec.*, No. 2:16-cv-223, 2017 WL 1102684, at *2 (S.D. Ohio Mar. 24, 2017)

(quoting R.&R.) ("Despite it being 'better practice [for an] ALJ to say explicitly which impairments are found to be non-severe and which are found not to be medically determinable,' [the plaintiff] was nevertheless unable to show how any of the impairments the ALJ did not list as severe negatively affected her functioning or ability to complete the work listed in her RFC." (first alteration in original)).  Accordingly, any error resulting from the fact that the ALJ did not find PTSD to be a severe impairment was harmless error that does not warrant remand.

## C.     Other Arguments Regarding the Step Four RFC Determination

Plaintiff makes several additional arguments that the Court construes as a challenge to the ALJ's RFC determination.  Plaintiff seems to contend that the ALJ's RFC determination did not take into account (1) medication side effects ("even after describing the meds I take the effects it has as well as side effects"; "they can have negative affects at times more so than less"), (2) that he cannot operate equipment or vehicles ("I'm advised not to operate any sort of equipment or motor vehicles"), and (3) that he cannot sit, stand, or concentrate beyond limited time period ("couldn't perform not even the menial job, unable to sit, stand or even concentrate for very limited amounts of time").  (Dkt. 17 (quotations cleaned up).)  Defendant does not address these contentions specifically but argues that substantial evidence supports the ALJ's RFC determination and that "Plaintiff has not proven any additional limitation not accounted for by the ALJ."  (Dkt. 22 at 9-10.)

### 1.      Effects of Plaintiff's Medications

As to Plaintiff's argument that the medications he takes and their side effects should have been somehow factored into the RFC determination, Plaintiff does not identify any limitations he believes should have been included in the RFC and were not. He may be calling attention to his testimony about the effects of medications at the hearing.  (Dkt. 17 (referring to "the facts that was obvious overlook at my hearing," and to that "after establishing the fact that I couldn't perform [work]," the ALJ asked whether an individual with Plaintiff's conditions could maintain employment).)  At the hearing, Plaintiff testified, "[A]ll of them have negative side effects.  They make me—the psychotropics make me comatose.  I'll be mummified.  . . .  I can't really function around the community or in society from the—from the Risperdal, nor mirtazapine, none of that stuff."  (R. 75.)

The ALJ noted that Plaintiff testified "that he suffered from side effects from his medication that included feeling 'comatose' and gaining weight."  (R. 15.)  The ALJ also reviewed several medical records indicating that Plaintiff's medications were effective. (R. 16 (quoting R. 634 ("Reports he is stable on his current medications."); R. 733 (blood pressure "greatly improved" on medication); R. 759-60 (medications continued); R. 769-73 (same).)

Other than his hearing testimony, Plaintiff has not identified any evidence showing that side effects of his medications require additional functional limitations in the RFC. On the contrary, several medical records specifically indicate that Plaintiff was not suffering from adverse side effects.  (*See* R. 677 (Plaintiff reporting on September 28,

2018 he did not take risperidone every night, as directed by doctor, but rather only as he needed to, and denying side effects from current medications); R. 717 (On February 1, 2017, Plaintiff "denies questions or concerns with Remeron [mirtazapine]"); R. 739 (requesting increase in Remeron dose on March 14, 2017 and "den[ying] any concerns with side effects"); R. 747 (On March 29, 2017, Plaintiff "finds his current psychotropic medications helpful").)  On January 11, 2017, Plaintiff claimed to be "immune" to his medications, had discontinued taking Elavil and Risperdal, and instead sought a medical cannabis prescription.  (R. 699.)  In sum, Plaintiff's self-reported side effects at the July 16, 2018 hearing are inconsistent with his reports to his treating providers in 2017 and 2018 regarding his Risperdal and mirtazapine (not to mention his reports that he had discontinued Risperdal or was taking it only as needed).  While any side effects and the efficacy of medications are relevant factors for an ALJ to consider, "[s]ubjective complaints may be discounted if the claimant's testimony is inconsistent with the evidence as a whole."  *Nash*, 907 F.3d at 1090 (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).  Here, the ALJ found that Plaintiff's testimony about his subjective complaints was inconsistent with the evidence as a whole and did not warrant more restrictive limitations than those included in the RFC.  (R. 15.)  The Court finds this decision was supported by substantial evidence.

### 2.    Limitation on Operating Equipment or Motor Vehicles

As to operating equipment or motor vehicles, the Plaintiff argues that he was "advised not to operate any sort of equipment or motor vehicals [sic]" after taking his medications.  (Dkt. 17.)  However, the RFC stated that Plaintiff "can never be exposed to

. . . moving mechanical parts, or operate a motor vehicle." (R. 14.) Because the RFC incorporated limitations prohibiting Plaintiff from exposure to moving mechanical parts and from operating a motor vehicle, there is no error with respect to equipment or vehicle limitations.

### 3.   Allegations About Limited Ability to Sit, Stand, and Concentrate

As to Plaintiff's argument that the RFC inadequately reflected his limitations because he is unable to sit, stand, or concentrate beyond a limited amount of time, Plaintiff does not identify any specific evidence supporting such restrictive limitations, other than raising the opinions of his doctors, addressed above. Once again, he may be calling attention to his testimony at the hearing. (Dkt. 17 (referring to "the facts that was obvious overlook at my hearing," and to that "after establishing the fact that I couldn't perform [work]," the ALJ asked whether an individual with Plaintiff's conditions could maintain employment).) At the hearing, Plaintiff testified that he would not be able to do his previous job as a cook because he is "physically or mentally unable," "[t]here's no way [he] could follow any kind of instructions, or recall, or remember," when he takes his medications he is "not going to be able to follow instructions," and his "back isn't going to let [him]." (R. 68-69.) He further testified, in response to the ALJ's question about what, in Plaintiff's own words, prevents him from working, "[M]y concentration. . . . I can't hold a thought. "I can't even . . . my back . . . and my knees . . . . [A]s far as lifting, my hands." (R. 70-71.) He also stated that he "could sit, without getting up . . . 10 to 15 minutes," could stand "not long, five, six minutes, without leaning," and could "go a few yards without gasping." (R. 73.)

The ALJ summarized Plaintiff's testimony in his discussion of Plaintiff's RFC, including that "he could sit for 15 minutes, stand for 5-6 minutes, walk a few yards, and lift 10 pounds." (R. 15.). The ALJ then concluded,

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because while the claimant's mental and physical impairments certainly cause limitations in functioning, they are not work preclusive.

(*Id.*) The ALJ went on to summarize two years' worth of medical records. (R. 16-18.)

The Court finds that substantial evidence supports the RFC determination. None of the records that the ALJ summarized included findings suggesting the kind of limitations Plaintiff testified to at the hearing. (*See id.*) Moreover, as discussed in Section III.A.1, the ALJ explained why he discounted Dr. Bridge's opinion as to physical limitations, and Plaintiff has not identified any other evidence supporting the physical limitations he testified to at the hearing. Indeed, Plaintiff's own hearing testimony suggests that his physical functions are not as limited as he contends. (R. 66-67 (uses public transit); R. 77 (attends church every week); R. 76, 81 (referring to going downtown); R. 82 ("I go fishing a lot").) On June 21, 2017, Plaintiff told his doctor that he was exercising more and was pleased about recent weight loss. (R. 758-59.) Similarly, as explained in Section II.B, the ALJ thoroughly considered the evidence as to Plaintiff's mental limitations, and substantial evidence (including the opinions of Dr.

Karayusuf, Dr. Kennedy, and Ms. Konke) supports the limitations in the RFC relating to

Plaintiff's ability to concentrate.  In fact, the ALJ did not discredit Plaintiff's difficulties

entirely, as evidenced by the fact that the ALJ limited Plaintiff's mental RFC to perform

no more than simple routine tasks at a nonproduction pace, simple work-related

decisions, and occasional interaction with coworkers and the public.  (R. 14.)  Similarly,

the ALJ limited Plaintiff's physical RFC to light work[9] with further limitations.  (*Id.*)

   To the extent Plaintiff is arguing that his testimony should have controlled as to

his limitations, "[s]ubjective complaints may be discounted if the claimant's testimony is

inconsistent with the evidence as a whole."  *Nash*, 907 F.3d at 1090 (citing *Polaski*, 739

F.2d at 1322).  Further, the role of this Court when reviewing the Commissioner's final

decision is "limited and deferential."  *Chismarich*, 888 F.3d at 980 (per curiam).  Under

the "deferential 'substantial evidence' standard," an ALJ's decision will be "affirm[ed] if

a reasonable mind could accept the . . . decision."  *Cuthrell v. Astrue*, 702 F.3d 1114,

1116 (8th Cir. 2013) (quotation marks and citation omitted).  What Plaintiff seems to be

asking this Court to do is reweigh the evidence before the ALJ regarding Plaintiff's

subjective complaints, as well as the effects of his PTSD and medications, on his ability

---

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

to perform the assigned RFC.  However, a reviewing court "do[es] not reweigh the evidence."  *Mabry v. Colvin*, 815 F.3d 386, 389 (8th Cir. 2016) (quotation marks and citation omitted).  In sum, the ALJ's decision to discount Plaintiff's testimony about his ability to sit, stand, and concentrate based on the evidence as a whole is supported by substantial evidence.

**D.     Whether Someone with Plaintiff's RFC Can Do the Representative Jobs**

Lastly, Plaintiff appears to be arguing that even if the RFC determination was correct and the hypothetical posed to the vocational expert at the hearing corresponded to the RFC, the vocational expert's answer to the hypothetical was not correct—in other words, a person with Plaintiff's RFC could not perform the occupations of housekeeper, food service worker, or mail clerk.  (Dkt. 17 ("After establishing the fact that I couldn't perform not even the menial job . . . .  Referring back to the hearing the judge asked the us attorney 'could a [sic] individual, in my condition with my symptoms maintain employment in the workforce,' his answer was yes I could get employment, as a hotel housekeeper, mail clerk, and food services.  Even after describing the meds I take the effects it has as well as side effects as well.  He said that I was still able to work, contrary to my doctors' statement of permanent disablement . . . .") (quotations cleaned up).)  Defendant argues that "[b]ecause the ALJ's hypothetical question to the vocational expert reflected all of Plaintiff's established impairments and limitations, the vocational expert's response provides substantial evidence to support the ALJ's step-five finding that Plaintiff was not disabled."  (Dkt. 22 at 10.)

When, as here, the ALJ finds at step four that a claimant cannot return to past

relevant work, the burden shifts at step five to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *see also* 20 C.F.R. §§ 416.920(g), 416.960(c)(1). A vocational expert's testimony that a claimant could perform work in the national economy may be substantial evidence in support of the ALJ's determination of no disability. *Pearsall v. Massanari*, 274 F.3d 1211, 1220 (8th Cir. 2001). "A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "Hypothetical questions should set forth impairments supported by substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments." *Jones v. Astrue*, 619 F.3d 963, 972 (8th Cir. 2010) (internal quotation marks and citation omitted).

Here, having employed a hypothetical that supported by substantial evidence in the record as a whole, the ALJ was entitled to rely upon the opinion of the vocational expert that there are a significant number of jobs in the economy that Plaintiff could perform. *Harris v. Barnhart*, 356 F.3d 926, 931-32 (8th Cir. 2004) (citing *Weiler v. Apfel*, 179 F.3d 1107, 1111 (8th Cir. 1999)). Plaintiff has not offered any evidence to the contrary, other than perhaps his doctors' opinions that he cannot work. As discussed previously, such opinions do not carry any special significance because it is the Commissioner who makes the ultimate determination of disability. *Davidson*, 578 F.3d at 842. For these reasons, the Court concludes that substantial evidence supports the ALJ's determination at step five.

34

## IV.   <u>ORDER</u>

Based on the above, and on the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Plaintiff Jerome S.'s Motion for Summary Judgment (Dkt. 17) is **DENIED**;

2.      Defendant Commissioner of Social Security Andrew Saul's Motion for

Summary Judgment (Dkt. 21) is **GRANTED**; and

3.      This case is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

DATED: September 29, 2020                    *<u>s/Elizabeth Cowan Wright</u>*
                                                                    ELIZABETH COWAN WRIGHT
                                                                    United States Magistrate Judge